(Cuyahoga Co. O., Common Pleas, 1901.)

MICHAEL P. MOONEY v. THOMAS H. BELL, as School Director of the City District of the City of Cleveland; L. H. JONES, as Superintendent of Instruction, and JAMES P. MADIGAN, as Auditor of The Board of Education of said District.

---

*The act authorizing the School Board of Cleveland to buy the text books to be used in the schools constitutional—*

1. In considering questions arising under the school legislation of the state it is the duty of a court to give such construction upon legislative enactments and the several provisions relating to the schools as will give harmony to our educational system and secure, so far as practicable, equal benefits and the reasonable facilities for their enjoyment to every locality.

2. While the subject of schools is general and of general interest, yet the subject of how, or by what agencies, the general provisions of laws applicable shall be carried out is pure a matter of local concern,.

3. The act of May 16, 1894, providing for the reorganization of boards of education in city districts of the second grade of the first class and amendments thereto are not unconstitutional because violative of section 26 of article 2 of the constitution, as a law of a general nature having only local application, because under that act the respective school board does not exercise different functions from other school boards, but the act creates only different agencies to exercise the same functions.

4. The purchase of text-books and the distribution, or, the "loaning of them to the pupils, on such terms and conditions as the board may prescribe" is not a discrimination in favor of some and against others.

5. Public schools are an institution of the state, for the purpose of protecting and preserving the state, and an act providing for the purchase of school books for the purpose of loaning the same to the pupils of the public schools would not be a discrimination against those who prefer to attend some other school than that provided for by the state, a diversion of the public funds for the benefit of a part the taxpayers, nor would it deny to any the equal protection of the law, nor would it discriminate against persons who have no children.

6. There is no legal obligation resting on parents or guardians to buy school books.

7. There is no difference in principle between the furnishing by the school board of a blackboard or a chart and the furnishing of books, these books to remain the property of the district and to be given out to the pupils on such terms and conditions as the board of education, may prescribe.

---

STRIMPLE, J. (Orally.)

In the case of Mooney, taxpayer, against Madigan, City Auditor, Bell, Director of Schools, and Jones, Superintendent, heretofore argued before this branch of the court, the plaintiff Mooney, as a taxpayer, seeks a temporary restraining order, alleging that the auditor is about to pay out money of the school funds of this district in contravention of law for an alleged purchase of school books which, it is claimed, was illegal, and for his reasons for asking the intervention of the court he claims:

(1) That the act creating the school board in city districts of the second grade, first class and the amendments thereto are void in that they are in contravention of the provisions of the constitution, which provides that all laws of a general nature shall have a uniform operation throughout the state.

(2) That the act of the general assembly passed on the 16th day of May, 1894, entitled "an act to amend section 4026 of the Ohio Statutes as amended April 25, 1890," is unconstitutional and void, for the reason that it is in violation of section 1 of Article 14 of the amendments to the constitution of the United States, and section 2, article 6 of the constitution of the state of Ohio, in that said act provides that a part of the public school funds of the state of Ohio shall be devoted to the purchase of text books and the free distribution and gift thereof to children attending the public schools of the state of Ohio, thereby relieving parents and guardians of children attending the public schools from their duty and obligation in furnishing necessary school books to the children in their charge and under their control and thereby discriminating against parents and guardians of children attending other than public schools and also discriminating against persons and taxpayers that have no children attending any schools; and it is claimed by the plaintiff that it violates said section 2 of article 6 of the constitution of the state by diverting the public school funds of the state from their constitutional objects and appropriating the same to the benefit of only a part of the taxpayers and residents of the state, and consequently, as it is claimed by the plaintiff, denying to him and a large number of other persons within the jurisdiction of the state the equal protection of the law as guaranteed to them by the 14th amendment to the constitution of the United States.

(3) Plaintiff claims that the auditor ought

to be restrained from payment of this expenditure for school books for the reason that there was no appropriation for the expenditure authorized by resolution of the school council.

(4) That there was no contract in writing for the purpose of the three text books executed in the name of the Board of Education, and that contract which, it is alleged, was executed by the school director has not been submitted to and approved by the school council, all of which, it is claimed, section 3699-20 requires to be done.

(5.) That there was no appropriation for the purchase of these text books that has been certified by the clerk of the school council to the auditor and treasurer of the Board of Education, as required by section 3699-14 of the Revised Statutes.

(6.) That the resolution which was passed by the school council looking toward the furnishing of free text books and what has been done under said resolution is in violation of section 4026 in this, that the resolution authorizes the furnishing of the three text books free of charge to a *part* only of the pupils attending the public schools and thereby excludes a large number from the benefits of said distribution, and claims, by the acts of the school council that the school funds of the district are about to be diverted from the purpose for which the funds were raised to a purpose other than that for which the tax providing for such funds was levied, which, it is claimed, is in violation of section 5, article 12 of the constitution of the state.

(7.) It is further claimed by the plaintiff as the 7th reason assigned that the purchase of these books, amounting in all to the sum of $19,000, as conceded by the facts, is intended to be made in lots of not more than $250 at one time, for the purpose of obviating the necessity of a written contract which, it is claimed, is in violation of the statutes relating thereto.

(8.) That the acts and threatened acts of the defendants, Bell, director and Jones, superintendent, are in violation of section 2, article 1 of the constitution.

(9.) That Bell, director and Jones, superintendent, acting under the direction of Bell, propose to distribute the three text books in large numbers, amounting to about 30,000 of "Quincy Word Lists" and 9,000 each of the "Natural Elementary Geography" and the "Natural Advanced Geography" among large numbers of the pupils attending the public schools, at the cost and expense of the school funds of the district, regardless of the ability of parents and guardians to purchase books for their children.

(10.) After reciting facts tending to show the activity of the director in seeking to induce action of the school council, looking to what is commonly known as the free text book plan, and facts tending to show the intention of the director with reference thereto, plaintiff alleges that the three books mentioned were substituted for others that were amply sufficient to meet the requirements of the pupils, and alleging further that a contract exists between the Board of Education and the Burrows Brothers Company for the sale and distribution of all text books and that that contract provides that all pupils needing the three text books may purchase the same from the said Burrows Brothers Company, at prices fixed by law, and it is claimed that the plaintiff has no adequate remedy.

The prayer contemplates the procuring of a restraining order restraining the ordering or purchasing of the three text books or any of them, the distribution of the same free of cost to the pupils and asks that Jones, superintendent, be restrained from distributing or ordering to be distributed the said three text books free of cost, at the cost of the public school fund, and that James P. Madigan, as such auditor of the Board of Education, may be enjoined from issuing his warrant in payment of said three text books or any of them purchased for free distribution among the pupils attending the public schools of said district.

We think it proper to call attention to the fact that the suit here brought is one which contemplates the protection of the public funds, and in no way can it or should it be employed for the purpose of controlling the discretion or conduct of a public official, so long as he does not attempt to divert or misappropriate the public moneys, so long as his acts are in accordance with the law prescribing his duties.

The facts in this case have been agreed upon by counsel, and so far as evidence has been offered, there appears to be no serious controversy.

In considering questions arising under the school legislation of the state it is the duty of a court to give such construction upon legislative enactments and the several provisions relating to the schools as will give harmony to our educational system and secure, so far as practicable, equal benefits and the reasonable facilities for their enjoyment to every locality.

So far as the constitution undertakes to place any limitation on the legislative power in providing means of education, we find first, in the bill of rights, section 7, the declaration that, religion, morality and knowledge being essentially necessary to good government and the happiness of mankind, schools and the means of instruction shall forever be in ac-

cordance with legislative provision, not inconssitent with the rights of conscience.

In section 2 of article 6 we find the constitutional provision, mandatory in its nature, as follow:

"The general assembly shall make such provisions by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state."

We also have the provision of the bill of rights, differing somewhat from a similar provision in the United States constitution, that declares that all rights not reserved by the constitution are granted to the people. The constitution itself nowhere undertakes to place any limitation upon the legislature in its duty to provide for the people of the state an efficient common school system. On the contrary, it urges upon the legislature the duty of providing such a system of schools.

The plaintiff undertakes the claim that the act providing for the reorganization of boards of education in city districts of the second grade of the first class and amendments thereto are unconstitutional and void, because they violate section 26 of article 2 of the constitution, for the reason that it is a law of a general nature and under its provisions it does not have a uniform operation throughout the state.

The Supreme Court of this state, in 56 Ohio St., 25—which seems to be the most recent adjudication on this subject—held that under provisions for a board of equalization, whose duties were to revise and equalize the value of real estate within the city, or rather the act creating such a board and the duties of the board under the act made it unconstitutional, for the reason that in all other parts of the state real estate was valued once in ten years, while under the provisions relating to the board of equalization provided for by the act the real estate within the city was revalued or revised at a period entirely different from that provided for by other parts of the state. The valuation of the real estate of the state for purposes of taxation should be such as to affect the values of all, and not the real estate of any particular locality. The subject was general in its nature, and for that reason the court held that the act creating the board and prescribing its duties was unconstitutional.

Counsel urges that the subject of schools is general and of general interest. That would be conceded. But the subject of how, or rather by what agencies, the general provisions of laws applicable shall be carried out is purely a matter of local concern, and this has been recognized by the legislature in nearly all of its provisions for the means of education throughout the state. We have township boards, spe-

cial districts, village and city districts, the provisions for which would all be unconstitutional if the claims of the plaintiff are well taken. The objection that is raised is not that they exercise a different function but that different agencies are created to exercise the same function. The question of the agency which shall be employed is local; the question of the functions, in so far as they relate to the establishment of a common school system, is general.

It is claimed by council that section 4026 of the Revised Statutes is unconstitutional for the reason that it violates section 2, article 6 of the constitution of the state, and section 1, article 14 of the amendments to the constitution of the United States. Section 4026 reads as follows:

"That each board of education may furnish the necessary school-books free of charge, to enable the parent or guardian, without expense therefor, to comply with the requirements of this chapter, the same to be paid for out of the contingent fund at the disposal of the board; and such levy each year, in addition, if necessary, to that otherwise authorized by law, is hereby authorized, as shall be necessary to furnish such school books free of charge to all the pupils attending the public schools; but such pupils as are already wholly or in part supplied with the necessary school books shall be supplied free of charge only as other or new books are needed; and all school-books furnished as herein provided, shall be considered and shall be the property of the district, and loaned to the pupils on such terms and conditions as each such board may prescribe."

Section 2, article 6 makes it incumbent upon the general assembly to secure a thorough and efficient system of common schools throughout the state.

Section 1, article 14 of the constitution of the United States, in so far as it relates to this question, provides that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

So far as the provision of the state constitution is concerned, there certainly can be nothing in the claims of counsel, for the reason that the legislature is charged with the duty of providing an efficient system of schools. But it is claimed here that the purchase of these text-books and the distribution, or, using the language of the statute, the "loaning of them to the pupils, on such terms and condi-

tions as the board may prescribe" will amount to a discrimination in favor of some and against others. Public schools are open to all of school age. They are an institution of the state, for the purpose of protecting and preserving the state, and it certainly can not be claimed with any degree of force that it would be a discrimination against those who prefer to attend some other school than that provided for by the state, neither would it be a diversion of the public funds for the benefit of a part of the taxpayers, nor would it deny to any the equal protection of the law, nor would it discriminate against persons who have no children, for the provisions relating to common schools and compulsory education are in the nature of legislation for the protection of the state itself. The objects which the legislature, in pursuance of the express provision of the constitution in providing efficient means of education for all children of school age, were not enacted in recognition of personal rights, but were enacted for the purpose of the preservation of the state itself.

The history of section 4026 of the Revised Statutes, and how it reached its present form is interesting: The legislature, in its wisdom, having undertaken and provided for the state an efficient system of common schools, it became important that parents and guardians of children should be required to send their children to school, and in order that the object of the provisions might be attained, enacted a compulsory educational law. There never was a legal obligation resting upon a parent or guardian to buy school-books; it was a moral obligation, so much disregarded that through the people there was demanded of the legislature an act compelling them to send their children to school, and in order to enable the parent or guardian to comply with the requirements, an act was provided by the legislature which permitted the furnishing of school-books by boards of education for such as were indigent and unable to pay. It became apparent that there were many objectionable features to a discrimination of this kind, to an undertaking on the part of the board of education to determine who was indigent and also who was unable to pay. Then the statute was made general, authorizing any board of education to furnish such school books, free of charge, as may be necessary, to all pupils attending public schools. We think it may be urged, and reasonably so, that the state can not discharge its duty by building schoolhouses alone; that there is no difference in principle between the furnishing of a blackboard or a chart and the furnishing of books, these books to remain the property of the district and to be given out to the pupils on such terms and

conditions as the proper functionaries, to-wit: the board of education, may prescribe. This act appears to be in perfect harmony with our free educational system, and there is no foundation whatever, in our judgment, for the conclusion that section 4026 in any way discriminates or denies to any person equal protection. Counsel claims that the expenditure for these books was not provided for as required by section 3899-14, which reads as follows:

"No money shall be drawn from the treasury except in pursuance of appropriations made by the school council, and whenever an appropriation is made by the council the clerk shall forthwith give notice thereof to the auditor and treasurer. No appropriation shall be made for a longer period than to the end of the current year, and at the end of each year, all the unexpended balances of appropriations shall revert to the school fund."

The school council by resolution made an appropriation of $40,000 for text books, and under the admitted state of facts in this case there is more than sufficient funds to discharge the debt incurred by the purchase of these books. The appropriation was for text-books and for such text-books as could be legally furnished by the board.

Nor is there anything in the claim, in our judgment, that a large number of the pupils attending the public schools will be excluded from the benefits of this distribution. The benefits, and the only benefits which can be considered at all, are the benefits to the state of an education to the child, derived from the use of these books. Schools are divided into grades and a curriculum of study, and books suitable to each grade are provided for. That is within the judgment of the proper officers, and to say that a child in the first grade would be deprived of the benefits derived from the distribution of these books, when it has been determined in the judgment of the proper officers that the child in the first grade in the course of his education can not properly use the book, is, in our judgment, without foundation. Maps, charts and other apparatus are furnished to the public schools and authority is given to purchase the same. These things are of use to certain grades in the public schools; they are of no use to other grades, and it can with equal force be claimed that when you buy a globe or a chart or a map or apparatus designed to demonstrate some principle in physics that would be of no benefit to a child not sufficiently developed to use it or secure from it any educational advantage. Section 4026 of the Revised Statutes, in our judgment, is in entire harmony with every constitutional provision, and the very object and purpose of this section was to avoid dis-

crimination.

It is claimed that the resolutions and the threatened acts of the defendant will divert the school funds from the purpose for which they were raised, and to a purpose other than that for which taxes providing for the fund were levied. There is but one purpose and can be but one purpose in every legislative enactment relating to the public schools, and that is a compliance with the constitutional duty visited upon the legislature to provide efficient means of education. The purpose for which this fund was raised primarily was that of education. True, the law requires that provision must be made for the erection of schoolhouses, furniture for buildings, books, the payment of teachers and janitors; but if the law provides for the free use of text-books, we find ourselves unable to discriminate between those books which the law requires the board to furnish the use of to the pupils free, on such terms as they may prescribe, and those which may be provided by the board and kept for sale.

In all the propositions urged by the plaintiff, or nearly all, it seems to the court that the difficulty arises out of the failure of plaintiff to distinguish between a local law and a law of a general nature. Schools and the necessity for them and the agencies through which the general system of schools provided for by the legislature are to be carried out is essentially a subject local in its nature; the functions to be performed by these agencies is a subject of a general nature.

In this application for a temporary order of injunction, it being conceded that these books have been purchased, that they have been delivered by the ones from whom purchased, to the purchaser the only question which demands the attention of the court is whether or not a temporary order should be allowed here, restraining the auditor from drawing his warrant in payment of them. We do not find in this record any reason for the interference of a court of equity by the remedy of injunction. We therefore refuse to allow a temporary order.

*M. P. Mooney*, for Plaintiff.
*Beacon, Babcock, Gage, etc.* for Defendant.